226 A.2d 137.

THE NEWPORT NATIONAL BANK *vs.*
PROVIDENCE INSTITUTION FOR SAVINGS.

THE NEWPORT NATIONAL BANK *vs.*
OLD STONE TRUST COMPANY.

THE SAVINGS BANK OF NEWPORT *vs.*
RAYMOND H. HAWKSLEY *et al.*
(OLD STONE TRUST COMPANY)

THE SAVINGS BANK OF NEWPORT *vs.*
RAYMOND H. HAWKSLEY *et al.*
(PROVIDENCE INSTITUTION FOR SAVINGS)

NEWPORT SAVINGS AND LOAN ASSOCIATION *vs.*
RAYMOND H. HAWKSLEY *et al.*
(OLD STONE TRUST COMPANY)

NEWPORT SAVINGS AND LOAN ASSOCIATION *vs.*
RAYMOND H. HAWKSLEY *et al.*
(PROVIDENCE INSTITUTION FOR SAVINGS)

FEBRUARY 1, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. These cases present the question whether the Administrative Procedures Act, G. L. 1956, chap. 35 of title 42, hereinafter referred to as the act, applies to proceedings before the Board of Bank Incorporation, hereinafter referred to as the board, seeking certificates to establish branch banking offices pursuant to the provisions of G. L. 1956, §§19-2-23 and 19-1-13.[1] The causes are before this court on appeals brought by certain remonstrants from a judgment of the superior court dismissing their petitions for judicial review of the board's action on the ground that the act was not applicable.

The Providence Institution for Savings, a savings bank, and the Old Stone Trust Company, a trust company, hereinafter sometimes referred to as the applicants, filed applications with the board under §§19-2-23 and 19-1-13, respectively, for certificates of public convenience and advantage to establish branch offices on the same premises at 98 Williams street, Newport. The board, in accordance with

[1]Sec. 19-2-23 relates to applications by savings banks and Sec. 19-1-13 to applications by banks or trust companies.

the requirements of the statute, assigned a date and place for a public hearing on the applications.

Section 19-2-23 reads as follows:

"Establishment of branches.—Any savings bank may establish a branch or branches within this state at any other place than its principal place of business upon obtaining the consent of the board of bank incorporation thereto. Said board of bank incorporation shall, before giving such consent, require that a notice of such intention to establish a branch or branches of said savings bank shall be given for the same period of time and in the same manner, and a hearing had thereon, as is provided in the case of incorporation of savings banks in §19-2-3; and if said board of bank incorporation shall decide that public convenience and advantage will be promoted by the establishment of such branch or branches, it shall, and it is hereby authorized to, issue a certificate to that effect, a copy of which shall be filed with the director of business regulation, and thereupon said branch or branches may begin the transaction of business. If said board refuses to issue such certificate, no further proceedings shall be had, but the application may be renewed after one (1) year from the date of such refusal, in which case notice of a public hearing thereon shall be published as hereinbefore provided."

Section 19-1-13 in substance reads the same as §19-2-23, except that it relates to establishment of branches by banks or trust companies.

The following banking institutions, hereinafter referred to as remonstrants, namely, The Newport National Bank, a commercial bank created by act of Congress, The Savings Bank of Newport, a mutual savings bank organized under the laws of this state, and Newport Savings and Loan Association, a state chartered association, are located in the city of Newport, not too distant from the location where applicants propose to establish their branch offices.

The remonstrants appeared at the initial hearing before the board at which they requested permission to enter their

appearance as parties of record, raised the question of, the applicability of the act, and objected to further proceedings pending the adoption by the board of rules of procedure as required by §42-35-2(2) of the act. The board continued the hearing to a later date for submission of memoranda and in the interim adopted rules of procedure pursuant to the requirements of §42-35-2(2). When the hearing was resumed, the board ruled that the act applied to the proceedings but held that the remonstrants were not legal parties thereto. However it invited the remonstrants to submit such evidence and arguments as they wished.

After a hearing on the merits the board made specific findings of fact and decided that public convenience and advantage would be promoted by the establishment of such branches. It then approved the applications and issued the prescribed certificates.

The remonstrants thereupon filed six separate petitions seeking judicial review of the board's decisions under §§42-35-15 and 42-35-16 of the act. By agreement the petitions were consolidated for hearing in the superior court and by stipulation the applicants were permitted to intervene.

The applicants filed motions in the superior court to dismiss the petitions for judicial review on the grounds that the court lacked jurisdiction because §42-35-15 is not applicable to proceedings before the board; that the proceedings before the board did not constitute a contested case; that the remonstrants were not parties to the proceedings before the board and were not parties aggrieved by its decision; that the decision of the board did not relate to any conflicting rights between adverse parties; and that the board in making its determinations on the applications before it was performing legislative acts and making policy determinations.

The superior court granted the motions to dismiss and entered judgment on the ground that the proceedings before the board could not be construed as a "contested case" as

that term is defined in the act and on the further ground that remonstrants were not "aggrieved parties" within the meaning of the act. It based its decision squarely on our holding in the case of *Newport National Bank* v. *Hawksley,* 92 R. I. 433. *Hawksley* involved a petition for certiorari to review the decision of the board in granting a certificate to establish a branch bank under §19-2-23. We held in substance that the proceeding there was not an adversary proceeding and therefore common-law certiorari did not lie.

In reviewing the legislative history of §19-2-23, we stated that the nature of the act of issuing a certificate was purely legislative and that the nature of the proceedings of the board performing such act was administrative. We also stated that the fact that a hearing was required and that certain conditions had to be met before the board could exercise such power did not mean that its action was necessarily judicial or quasi-judicial.

We agree with the superior court's statement that "The sole issue before this Court is whether the Administrative Procedures Act affected the decision of our Supreme Court in *The Newport National Bank* vs. *Hawksley, et al, supra,*" but we cannot agree with its determination of this issue. We believe that the answer to this question depends upon whether these proceedings are contested cases within the meaning of the act. If they are, the act is applicable and therefore has affected our decision in *Hawksley*. In that event the only other question is whether remonstrants, as competing banking institutions in the same area, are persons aggrieved within the contemplation of the act.

We note here that the opinion in *Hawksley* was filed on April 13, 1961 and that the Administrative Procedures Act was approved on April 17, 1962.

Sections 19-2-23 and 19-1-13, under which the applications were filed, provide for public hearings as a condition precedent to action by the board. Section 42-35-1 of the act, in part, contains the following definitions:

"(a) 'agency' includes each state board, commission, department, or officer, other than the legislature or the courts, authorized by law to make rules or to determine contested cases.

"(b) 'contested case' means a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing;

"(c) 'license' includes the whole or part of any agency permit, certificate, approval, registration, charter, or similar form of permission required by law, but it does not include a license required solely for revenue purposes;

"(d) 'licensing' includes the agency process respecting the grant, denial, renewal, revocation, suspension, annulment, withdrawal, or amendment of a license;

"(e) 'party' means each person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party;

"(f) 'person' means any individual, partnership, corporation, association, governmental subdivision, or public or private organization of any character other than an agency * * * ."

Section 42-35-15 provides for judicial review of contested cases. It reads, in pertinent part, as follows:

"(a) Any person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter. This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law."

We inquire initially whether these proceedings are contested cases within the meaning of §42-35-15. We believe they are. A hearing was required under §§19-2-23 and 19-1-13. The hearing was before a state agency. The applications for certificates of public convenience and advantage involved licensing within the meaning of §42-35-1(c) and

(d). The legal rights, duties or privileges of a specific party are required by law to be determined after public hearing —the specific party in each case being the Providence Institution for Savings and Old Stone Trust Company, respectively. The definition of a contested case does not refer to conflicting rights between adverse parties, but refers to the determination of the legal rights, duties or privileges of a specific party. We find nothing in the language of the act which restricts its application to a determination of proceedings which are judicial or quasi-judicial in nature. The language of the act is clear and there is no ambiguity. These proceedings were contested cases. The act is not a restatement of existing law and therefore we do not refer back to previous case law to aid in its interpretation. It is our judgment that notwithstanding our decision in *Hawksley* the legislature has mandated that proceedings such as these are contested cases and subject to judicial review.

Reference has been made to decisions in other jurisdictions, particularly to three Massachusetts cases entitled *Natick Trust Co.* v. *Board of Bank Incorporation,* 337 Mass. 615, *City Bank & Trust Co.* v. *Board of Bank Incorporation,* 346 Mass. 29, and *Chicopee Co-op. Bank* v. *Board of Bank Incorporation,* 347 Mass. 744. We have examined those cases but do not deem it necessary to discuss them because the circumstances in each differ substantially from the proceedings before us. In *Natick Trust* and *City Bank* the statute did not require a hearing of any kind, and in *Chicopee Co-op. Bank* no question was raised as to the standing of any party and it was conceded that the provisions for review under the Administrative Procedures Act were all applicable.

We next consider the question whether these remonstrants are persons aggrieved within the meaning of §42-35-15. The authorities and the cases from other jurisdictions have taken divergent views on the question wheth-

er business competitors are persons aggrieved with standing to institute judicial review of actions of administrative boards in licensing cases. We adopt the view of what we consider are the better-reasoned cases, namely, that competing banks have standing to obtain judicial review of administrative proceedings granting another bank a license to locate a branch in the same community served by a remonstrant. We believe that this view represents the more realistic and practical approach and therefore agree with the reasoning in *Elizabeth Federal Savings & Loan Ass'n* v. *Howell*, 24 N. J. 488, where the court said at page 501:

> "But it may very well be that the establishment of a new branch at the location in question will substantially prejudice the existing banking institutions, with resulting adverse effects upon the public in general through other similar institutions in the area. For, if one banking institution should fail in the community as the result of an ill-advised burdening of the existing competitive environment, other financial institutions do not continue unaffected. Some elements of public distrust and lack of faith are inevitably transmitted to them * * *. Many will still remember the unfortunate incidents attaching to the granting of some charters in the boom days of a quarter of a century ago. Competing banking institutions may be the only persons with sufficient private interest in harmony with the public concern for the safety of savings and bank deposits to bring the attention of the courts to errors of law in an administrative action granting a license to establish a branch contrary to the standards set by the statute delegating authority to so act. If such banking institutions do not have the necessary standing, who then is there who can or will challenge an administrative decision favorable to the applicant? Without standing in the appellants to invoke the power of judicial review, the Commissioner's action favorable to Colonial, right or wrong, proper or arbitrary,

takes on a conclusive character to the possible great detriment of the people as a whole."

See also *Delaware County National Bank* v. *Campbell*, 378 Pa. 311, *North Federal Savings & Loan Assoc.* v. *Becker*, 24 Ill.2d 514, and *Hall* v. *Banking Review Board*, 13 Wis.2d 359.

The fact that the remonstrants were not "parties" in the administrative proceedings is of no material significance in determining whether they are persons aggrieved within the contemplation of the act. In considering the right to appeal, "party" and "aggrieved person" are not necessarily one and the same. *Gardiner* v. *Kennelly*, 79 R. I. 367; *Ankney* v. *Pettine*, 79 R. I. 471. The test is whether they may be adversely affected by the administrative action and whether the realities of the situation in reason require that they have standing to seek judicial review. The better-reasoned cases hold that a person who is directly adversely affected in his economic interest by the administrative decision which he challenges has the required standing. See *United States* v. *Storer Broadcasting Co.*, 351 U. S. 192 (1956), and *Federal Communications Commission* v. *Sanders Brothers Radio Station*, 309 U. S. 470 (1940).

For the reasons stated it is our judgment that the superior court erred in holding that the proceedings before the board were not a "contested case" and the remonstrants were not persons aggrieved.

The remonstrants' appeals are sustained, the judgment granting the applicants' motions to dismiss is reversed, and the causes are remanded to the superior court for further proceedings.

*Moore, Virgadamo, Boyle & Lynch, Francis J. Boyle,* for appellant The Newport National Bank; *Corcoran, Peckham & Hayes, William W. Corcoran,* for appellant The Savings Bank of Newport; *Sheffield & Harvey, An-*

*drew M. Brown, Jr.,* for appellant Newport Savings and Loan Association.

·   *Higgins, Cavanagh & Cooney, John P. Cooney, Jr.,* for appellees Providence Institution for Savings and Old Stone Trust Company.