CITY OF HARTFORD ET AL. *v.* ARTHUR POWERS, COMMISSIONER OF TRANSPORTATION

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued November 6, 1980—decision released February 3, 1981

*Susan T. Pearlman* and *Arnold K. Shimelman,* assistant attorneys general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *William A. McQueeney,* assistant attorney general, for the appellant (defendant).

*Alexander A. Goldfarb,* corporation counsel, for the city of Hartford, *Dennis L. Pieragostini,* assistant corporation counsel, and *James F. Meehan,* special assistant corporation counsel, with whom, on the brief, were *James J. Szerejko,* assistant corporation counsel, *Raymond R. Norko, Judith I. Solomon* and *Peter Munsing,* for the appellees (plaintiffs).

BOGDANSKI, J. The defendant, as commissioner of transportation, adopted a schedule of bus fares that resulted in fare increases for the Connecticut Transit Company, a wholly owned subsidiary of the state of Connecticut. The hearings on the increased fares, required by the Urban Mass Transit Act, 49 U.S.C. § 1604 (i) (1976), were held in New Haven, Stamford and Hartford. The fares adopted were neither published in the Connecticut Law Journal, approved by the attorney general nor furnished to the legislative regulations review committee.

On February 6, 1980, the plaintiffs, the city of Hartford and Patricia White Meehan, pursuant to General Statutes § 4-176, filed with the defendant a request for a declaratory ruling on the following matters: (1) Will the commissioner of the department of transporation, in acting on the proposed fare increase for Connecticut Transit, follow the procedures set out by the Uniform Administrative Procedure Act (hereinafter UAPA) for the promulgation, adoption and approval for all regulations as required by General Statutes §§ 4-166 through 4-189? (2) Will the proposed fare increase and the subsequent decision of the commissioner be considered as a regulation of general applicability and subject to the requirements of the UAPA? (3) Is the Connecticut Transit Company fare increase considered by the department of transportation a "contested case" subject to the requirements of the UAPA?

In addition, the plaintiffs filed a request for the promulgation of regulations as follows: "(1) Petitioners request the Department of Transportation to promulgate regulations in accordance with the UAPA . . . as to the procedures used by the Com-

missioner of Transportation in reaching a decision on the proposed fare increase of Connecticut Transit Company; (2) Petitioners request that the Department of Transportation establish by regulation the criteria and standards that will be evaluated by the Commissioner in reaching a decision on any proposed fare increase for Connecticut Transit Company."

Relying on his statutory powers set forth in § 13b-34a, the defendant replied as follows: "The exercise of this statutory authority by the Commissioner of Transportation is not within the purview of the Uniform Administrative Procedure Act" and denied the plaintiffs' requests.

The plaintiffs thereafter brought this action alleging that the defendant erred in asserting that the UAPA did not apply; in refusing to apply the rules of practice provisions of the UAPA; in making erroneous express findings; in setting bus fares pursuant to an unlawful delegation of legislative authority; and in violating the due process rights of the plaintiffs. In their prayers for relief the plaintiffs sought a declaratory judgment and other relief.

The trial court concluded that the UAPA applies to and governs the action of the defendant pertaining to the proposal, consideration and implementation of a fare increase; that the fare increase is a regulation subject to the procedures of the UAPA; and that the fare increase does not constitute a contested case as defined by the UAPA. The court, however, did not rule on the claim that the procedure used by the defendant was in violation of the Connecticut and United States constitutions on the ground that it was not necessary to reach those

issues in rendering the decision. The court also did not decide whether the defendant must adopt rules of practice governing the procedure for promulgating a fare increase or whether the defendant made the findings required by § 13b-35.

In addition, the plaintiffs sought to have the trial court remand the case to the defendant pursuant to § 4-183 (g) with specific directives for compliance. The court noted that it had not made any findings against the defendant pursuant to § 4-183; that its findings were made pursuant to §§ 4-175 and 52-29 of the General Statutes and § 388 of the Practice Book, and denied the request for such a remand. The court did, however, retain jurisdiction to guarantee compliance by the defendant with the provisions of the UAPA.

The threshold question on appeal is whether the UAPA applies to the actions of the defendant. "[T]he UAPA was intended to be a uniform guide to all agency action, as the term 'agency' is defined in § 4-166 (1). . . . [T]he act was designed for two purposes. First, it provides for uniform standards by which all non-exempted agency action is to be judged; second, it provides a vehicle for judicial review as an alternative for preexisting statutes or in situations in which no appellate review was previously provided." *McDermott* v. *Commissioner of Children & Youth Services,* 168 Conn. 435, 440-41, 363 A.2d 103 (1975). Section 4-166 (1) provides that: " 'Agency' means each state board, commission, department or officer, other than the legislature, courts, judicial review council, governor, lieutenant governor, attorney general or town or regional boards of education, authorized by law to make regulations or to determine contested cases."

As already noted, it is the position of the defendant that his exercise of statutory authority pursuant to § 13b-34a[1] is not within the purview of the UAPA. We do not agree. Section 4-185 of the General Statutes provides that "[e]xcept as to proceedings pending on January 1, 1972, this chapter applies to all agencies and agency proceedings not expressly exempted." The exemptions are set forth in §§ 4-186, 4-187, 4-188 and 4-188a. Since the defendant agency is not listed as exempt in any of these sections, it is therefore nonexempt and is subject to the provisions of the UAPA.

The UAPA procedures for the adoption of regulations are intended to govern that part of the administrative process that resembles a legislature's enactment of a statute, while procedures for a contested case are intended to govern that part of the administrative process that resembles a court's decision of a case. It is recognized, however, that the distinction between the two is sometimes blurred. "[P]recise definitions . . . are unattainable and undesirable. In the law as it is, the same function may be rulemaking for one purpose or in one context and adjudiction for another purpose or in another context." 2 K. Davis, Administrative Law Treatise (2d Ed. 1979) § 7:2. See 1 Am. Jur. 2d, Administrative Law § 181. An agency may also act with informal procedures.

The question now becomes what procedures under the UAPA must be followed by the defendant in the present fare increase.

---

[1] General Statutes § 13b-34a provides that the commissioner shall have the power to aid or promote the operation of any transportation service in the name of the state and in so doing to establish, charge and collect such fares and other charges as he may deem necessary, convenient or desirable.

In order to answer this question, we must look to the relevant statutory definitions. As defined in § 4-166 (7), " 'Regulation' means each agency statement of general applicability . . . that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of a prior regulation, but does not include (A) statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public, (B) declaratory rulings issued pursuant to section 4-176, or (C) intra-agency or interagency memoranda."

That the present fare increase is a statement issued by the defendant cannot be questioned. Nor can it be disputed that the fare increase applies generally to Connecticut Transit operations in the Hartford, New Haven and Stamford regions. It clearly implements and prescribes law and policy pursuant to §§ 13b-32, 13b-17, 13b-34a and 13b-35. The conclusion, therefore, that a fare increase constitutes a regulation is unavoidable. *Salmon Brook Convalescent Home* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 417 A.2d 358 (1979).

The defendant, however, argues that the fare increase is exempt as it is a statement concerning the internal management of an agency. A fare increase directly involves the public and cannot be said to concern solely the internal management of Connecticut Transit. See *Seaboard World Airlines, Inc.* v. *Gronouski,* 230 F. Sup. 44 (D.D.C. 1964); *Doe* v. *Chang,* 58 Hawaii 94, 564 P.2d 1271 (1977).

The plaintiffs claim that the provisions of the UAPA relating to a contested case apply as well to

the fare increase process. Section 4-166 (2) defines "contested case" as "[a] proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include hearings referred to in section 4-168." The plaintiffs premise their claim upon the fact that a hearing is required by the Urban Mass Transit Act, 49 U.S.C. § 1604 (i), and that their legal rights and privileges were subsequently determined.

The hearing required by the Urban Mass Transit Act is in the nature of the hearings referred to in § 4-168 of our General Statutes. This is clearly a hearing limited to the adoption of regulations. Besides, there are no legal rights, duties or privileges[2] of the plaintiffs that would be affected by the rate increase. We conclude the trial court properly ruled that the present proceedings did not constitute a contested case.

Moreover, since the UAPA applies to the rate increase process, the defendant is required by § 4-167 to adopt rules of practice. At the trial, the plaintiffs argued that the defendant must adopt rules of practice governing the manner and procedure by which a fare increase is proposed, considered and implemented. In his answer, the defendant admitted he did not have rules of prac-

---

[2] Webster's Third New International Dictionary defines privilege as "a right or immunity granted as a peculiar benefit, advantage, or favor; special enjoyment of a good or exemption from an evil or burden; a peculiar or personal advantage or right esp. when enjoyed in derogation of common right; prerogative." The plaintiffs claim no such peculiar advantages or exemptions.

tice.[3] Although this claim was properly before the court,[4] it declined to consider the claim.

The plaintiffs further assert that the defendant failed to make the express findings which are mandated by § 13b-35.[5] Again, although the claim was being pressed, the court failed to rule on it. We conclude that the court erred in failing to rule on these two issues.

Lastly, the plaintiffs claim the court erred in refusing to consider several constitutional issues. We have held on numerous occasions that the court

[3] On appeal, however, the defendant contends that he has rules of practice as evidenced by §§ 13b-17a-1 through 13b-17a-12 and §§ 13b-17b-1 through 13b-17b-11 of the Regulations of Connecticut State Agencies, which comply with General Statutes § 4-167. The defendant contends that he need not promulgate rules of practice specifically for the proposed Connecticut Transit fare increase. The sufficiency of these regulations is not before us.

[4] Practice Book § 285A provides, in part: "If a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim."

[5] "[General Statutes] Sec. 13b-35. EXPRESS FINDING REQUIRED BEFORE COMMISSIONER CAN EXERCISE POWER. The commissioner shall exercise the powers conferred by subsection (a) of section 13b-34, only after he has made an express finding that (1) certain specific transportation facilities with respect to which the powers are to be exercised may be discontinued, disrupted or abandoned in whole or in part, (2) the discontinuance, disruption or abandonment of such facilities will be detrimental to the general welfare of the state and (3) the exercise of such powers is essential to the continuation of such necessary transportation facilities; or after he has made an express finding that specific transportation facilities may not be operated in the manner required by the general welfare of the state or that additional transportation facilities are required and the exercise of such powers is essential to the improvement of transportation facilities and services; or after he has made an express finding that future growth and needs of the state require state acquisition or control of transportation rights-of-way, properties or other facilities."

will not pass upon a constitutional question if there is present some other ground upon which the case may be decided. *Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (Brandeis, J., concurring), reh. denied, 297 U.S. 728, 56 S. Ct. 588, 80 L. Ed. 1011 (1936); *State* v. *Gold,* 180 Conn. 619, 639–40, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980), quoting *Negron* v. *Warden,* 180 Conn. 153, 166–67, 429 A.2d 841 (1980).

There is error in part, the judgment is affirmed except as to the two issues not addressed by the court, and the case is remanded for a determination of those two issues.

In this opinion the other judges concurred.