ORVILLE COLEY *v.* CAMDEN ASSOCIATES,
INC., ET AL.
(SC 15738)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued September 30—officially released November 25, 1997

*Michelle D. Truglia*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, *William J. McCullough*, assistant attorney general, for the appellant (defendant second injury fund).

*William C. Brown*, for the appellee (defendant Eastern Casualty Insurance Company).

*Albert B. Harper* filed a brief for the appellee (plaintiff).

*Opinion*

CALLAHAN, C. J. This is an appeal by the defendant second injury fund (fund) from a decision of the workers' compensation review board (board) that Public Acts 1995, No. 95-277, § 9 (f) (P.A. 95-277, § 9 [f]), now codified at General Statutes § 31-301 (f),[1] applies prospectively only. The board determined that the fund,

---

[1] General Statutes § 31-301 (f), as amended by P.A. 95-277, § 9 (f), now provides: "During the pendency of any appeal of an award made pursuant to this chapter, the claimant shall receive all compensation and medical treatment payable under the terms of the award to the extent the compensation and medical treatment are not being paid by any health insurer or by any insurer or employer who has been ordered, pursuant to the provisions of subsection (a) of this section, to pay a portion of the award. The compensa-

rather than the claimant's employer or the employer's insurer, was liable for the payment of workers' compensation benefits to the claimant during the pendency of a previous appeal. The previous appeal was brought by the claimant's employer and the employer's insurer from a decision of the workers' compensation commissioner for the first district holding them liable for the payment of benefits to the claimant. The sole issue on appeal to this court is whether P.A. 95-277, § 9 (f), should be applied retroactively or prospectively only.

The relevant facts and procedural history are as follows. In June, 1995, the legislature enacted P.A. 95-277, § 9 (f), as an amendment to the Workers' Compensation Act. General Statutes § 31-275 et seq. The amendment eliminated the fund's responsibility for the payment of workers' compensation and disability benefits to a claimant during the pendency of an appeal from an award of those benefits[2] and shifted this obligation to the claimant's employer or the employer's insurer. The amendment became effective on July 1, 1995.

tion and medical treatment shall be paid by the *employer or its insurer.*" (Emphasis added.)

[2] In 1984, the legislature enacted Public Acts 1984, No. 84-133, codified at General Statutes § 31-301 (b), which required that the fund be responsible for making payments to an injured employee suffering from occupational disease during the pendency of an appeal from an award of benefits. At the termination of the appeal, the losing party was required to reimburse the fund, plus 10 percent interest, for those interim payments. Public Acts 1986, No. 86-27, amended the 1984 public act to include all injuries, not merely occupational disease. Subsection (b) of § 31-301 was later divided and transferred to subsections (f) and (g) of § 31-301 by Public Acts 1991, No. 91-32, §§ 19, 41.

Prior to its amendment by P.A. 95-277, § 9 (f), § 31-301 (f) provided in relevant part: "During the pendency of any appeal of an award made pursuant to this chapter, the claimant shall receive all compensation and medical treatment payable under the terms of the award to the extent the compensation and medical treatment are not being paid by any health insurer or by any insurer or employer who has been ordered, pursuant to the provisions of subsection (a) of this section, to pay a portion of the award. The compensation and medical treatment shall be paid from the *Second Injury Fund* pursuant to § 31-354." (Emphasis added.)

On June 30, 1995, one day prior to the effective date of P.A. 95-277, § 9 (f), the plaintiff, Orville Coley (claimant), was injured in the course of his employment by exposure to toxic chemicals. He thereafter brought a claim for workers' compensation benefits against his employer, the defendant Camden Associates, Inc. (employer), and its insurer, the defendant Eastern Casualty Insurance Company (insurer).[3] The workers' compensation commissioner for the first district rendered a finding and award in favor of the claimant. The claimant's employer and its insurer both appealed from that decision to the board, and that appeal is currently pending.[4]

Subsequent to the filing of the appeal in the underlying action, the claimant moved for payment of benefits pending appeal pursuant to § 31-301 (f). The workers' compensation commissioner for the second district

[3] The claimant also named in his claim for benefits another employer, Coastal Energy, Inc., and another insurer, Liberty Mutual Insurance Company. Those parties are not involved in this appeal.

[4] The insurer asserts that this case should be dismissed for lack of a final judgment. It argues, correctly, that if the board determines in the underlying action that the insurer is not liable for lack of a valid insurance contract, and that the employer is unable to make the ordered payments, the fund will become obligated to assume the liability for the uninsured employer. See General Statutes § 31-355. Therefore, the insurer contends that there is no final judgment. This conclusion is incorrect. The decision from which the fund appeals is separate and independent from the appeal to the board by the employer and the insurer. The fund, in a separate proceeding pursuant to § 31-301 (f), was ordered to make interim payments to the claimant during the pendency of the appeal by the employer and the insurer from the underlying action. An appeal was properly taken to the board, and the board issued a final decision on the sole issue before it, namely, liability of the fund. The fund is not now, and never was, a party to the underlying action. The fact that the appeal from the underlying workers' compensation action is still pending is not relevant to the question of whether there is a final decision in this case. Although the ultimate decision by the board in the underlying action may require the fund eventually to pay the claimant's benefits, that does not detract from the finality of the board's decision in this case. Accordingly, the appeal is properly before us.

(commissioner) concluded that P.A. 95-277, § 9 (f), should be applied prospectively only and ordered the fund to pay the claimant's benefits until the appeal was resolved. The fund appealed from the commissioner's decision to the board, asserting that adoption of P.A. 95-277, § 9 (f), precluded a finding of liability on the part of the fund for payment of benefits during the pendency of the appeal. The fund argued that because P.A. 95-277, § 9 (f), is procedural, it applies retroactively to all cases not transferred to the fund before its effective date, regardless of the date of the underlying injury. The board, relying on the "date of injury rule,"[5] rejected the fund's argument and affirmed the decision of the commissioner, concluding that P.A. 95-277, § 9 (f), has prospective effect only. The fund appealed from the decision of the board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).[6]

On appeal, the fund asserts that the legislature intended P.A. 95-277, § 9 (f), to have retroactive effect and that the board improperly concluded that it applies prospectively only. The insurer denies that the legislature intended that P.A. 95-277, § 9 (f), have retroactive effect, and contends that the law as it existed on the date of the claimant's injury is controlling. We conclude that the date of injury rule is not applicable, and, further-

[5] The "date of injury rule" is a rule of statutory construction that establishes a presumption that "new workers' compensation legislation affecting rights and obligations as between the parties, and not specifying otherwise, applie[s] only to those persons who received injuries after the legislation became effective, and not to those injured previously. This date of injury rule was first referred to in 1916 in *Schmidt* v. *O.K. Baking Co.*, 90 Conn. 217, 220–21, 96 A. 963 (1916)." *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988).

[6] The parties to this appeal include the fund, as appellant, and the insurer and the claimant, as appellees. The claimant takes no position as to the proper determination of the retroactive effect of the act. We, therefore, focus on the arguments of the fund and the insurer.

more, that the legislature intended P.A. 95-277, § 9 (f), to be given retroactive effect.[7]

Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. See, e.g., *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987). In order to determine the legislative intent, we utilize well established rules of statutory construction. "Our point of departure is General Statutes § 55-3, which states: 'No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect.' The 'obligations' referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of *presumed* legislative intent that statutes affecting *substantive* rights shall apply prospectively only." (Emphasis added; internal quotation marks omitted.) *Rice* v. *Vermilyn Brown, Inc.*, 232 Conn. 780, 786, 657 A.2d 616 (1995). To determine if P.A. 95-277, § 9 (f), should be applied retroactively or prospectively, therefore, we must first decide whether the statute is substantive or procedural in nature.

The issue of retroactive application of a workers' compensation statute is generally governed by the date of injury rule, which "functions as a presumption of legislative intent within the workers' compensation context, similar to the general presumption against retroactive application of a statute." *Gil* v. *Courthouse One*, 239 Conn. 676, 686, 687 A.2d 146 (1997). A review of the cases addressing the date of injury rule indicates that, in accordance with the general rules regarding

---

[7] The fund has also asserted that the date of injury rule applies only to issues involving the contractual relationship between the claimant and his or her employer and should not be applied when the issue is liability as between the employer and the fund. Because we conclude that the date of injury rule does not apply to this case, it is unnecessary to reach that issue.

retroactivity, the date of injury rule applies only to those cases in which the legislation has affected a substantive right. See, e.g., *Civardi* v. *Norwich*, 231 Conn. 287, 293 n.8, 649 A.2d 523 (1994); *Kluttz* v. *Howard*, 228 Conn. 401, 404, 636 A.2d 816 (1994); *Chieppo* v. *Robert E. McMichael, Inc.*, 169 Conn. 646, 650, 363 A.2d 1085 (1975). "By contrast, procedural statutes generally are applied retroactively absent a clear expression of legislative intent to the contrary." *Rice* v. *Vermilyn Brown, Inc.*, supra, 232 Conn. 786 n.12; see *Miano* v. *Thorne*, 218 Conn. 170, 175, 588 A.2d 189 (1991) ("we have presumed that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary"); *Citizens Against Pollution Northwest, Inc.* v. *Connecticut Siting Council*, 217 Conn. 143, 151, 584 A.2d 1183 (1991); *Mulrooney* v. *Wambolt*, 215 Conn. 211, 216–17, 575 A.2d 996 (1990) ("[p]rocedural statutes . . . ordinarily apply 'retroactively to all actions whether pending or not at the time the statute . . . became effective, in the absence of any expressed intent to the contrary' "); *Darak* v. *Darak*, 210 Conn. 462, 467–68, 556 A.2d 145 (1989); *Chieppo* v. *Robert E. McMichael, Inc.*, supra, 650 ("[t]he method of appeal from the compensation commissioner . . . is not controlled by the statute in effect on the day of the injury"). Thus, if a workers' compensation statute is procedural in nature, the date of injury rule and its presumption against retroactivity are inapplicable. We must determine initially, therefore, whether P.A. 95-277, § 9 (f), effects a change in the substantive rights of the parties. We conclude that it does not.

Public Act 95-277, § 9 (f), switches the obligation to pay benefits to a claimant during the pendency of an appeal from the fund to an insurer. If eventually it is determined that a claimant is not entitled to the benefits he or she has received, the claimant is obligated to

reimburse the insurer, just as the claimant or insurer, depending on the outcome of the appeal, was required to reimburse the fund prior to the amendment of § 31-301 (f). The method chosen by the legislature of accelerating payment to a claimant does not affect a substantive right of the insurer because a claimant is statutorily obligated to repay, with interest, all benefits received by the claimant to which it is found the claimant was not entitled. The statutory scheme affects only "the remedy by which the payment of compensation is assured"; *Everett* v. *Ingraham*, 150 Conn. 153, 157, 186 A.2d 798 (1962); and is not substantive. See id. Because P.A. 95-277, § 9 (f), is procedural in nature, we must presume that it is applied retroactively unless the legislature clearly expressed an intention that it should be given prospective effect only. *Miano* v. *Thorne*, supra, 218 Conn. 175; see *Rice* v. *Vermilyn Brown, Inc.*, supra, 232 Conn. 786 n.12. The insurer has not met its burden of rebutting that presumption.

The legislature's lack of a clear expression of an intention that the date of injury rule apply, or that P.A. 95-277, § 9 (f), should be applied prospectively, is not the sole source of our determination of the legislature's intent. Other principles of statutory interpretation lead us to conclude that the act has retroactive application. "Statutory construction is a question of law and therefore our review is plenary." *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). "Our fundamental objective when construing a statute is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 295, 695

A.2d 1051 (1997); *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d 851 (1996); see *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994).

The legislative history and circumstances surrounding the adoption of P.A. 95-277, § 9 (f), and of the legislative policy it was designed to implement, clearly demonstrate a legislative intent to apply the public act retroactively. The problems faced by the fund at the time P.A. 95-277, § 9 (f), was adopted were grave. The legislature was faced with a report suggesting that the fund "had become a major financial disaster or near-disaster that possibly threatened the future economic health of our state. . . . [T]he future liability of the Second Injury Fund approached almost six billion dollars . . . ." 38 H.R. Proc., Pt. 16, 1995 Sess., p. 5946, remarks of Representative James O'Rourke. Representative O'Rourke went on to note that transfers into the fund had increased from 425 cases in 1984 to 6755 in 1991, a 630 percent increase.[8] Id., p. 5947. In the face of these sobering facts, the legislature unanimously passed P.A. 95-277 in an attempt to salvage the fund.

These circumstances and the purpose of P.A. 95-277, § 9 (f), remain at the forefront of our interpretation. "[A] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent." *State* v. *Spears*, 234 Conn. 78, 91, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995), quoting 2A J. Sutherland, Statutory Construction (5th Ed. 1992) § 46.05, p. 103. "[C]ompelling principles of statutory construction . . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose

---

[8] It was also in 1984 that the fund first became obligated to make interim payments during the pendency of an appeal. See footnote 2 of this opinion.

the legislature sought to achieve. . . . If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable." (Citations omitted.) *Turner* v. *Turner*, 219 Conn. 703, 712–13, 595 A.2d 297 (1991).

The purpose of P.A. 95-277 was to overhaul the workers' compensation system in Connecticut, and, specifically, to reduce the financial burden on the fund. See, e.g., 38 S. Proc., Pt. 15, 1995 Sess., pp. 5486–93, remarks of Senator John Kissel; 38 H.R. Proc., Pt. 16, 1995 Sess., pp. 5946–47, remarks of Representative O'Rourke. We must construe the legislation in a manner consistent with that goal. An interpretation of P.A. 95-277, § 9 (f), as having prospective effect only, would seriously undermine the legislature's purpose to reduce the fund's liabilities immediately. To conclude that any case in which the claimant's injury occurred prior to July 1, 1995, is unaffected by P.A. 95-277, § 9 (f), would require interim payments by the fund well into the future and would defeat the legislative purpose of promptly and dramatically reducing the fund's liability.

In addition to consideration of the legislature's general purpose in revising the workers' compensation system as a whole, we are further persuaded of the legislature's specific intent to apply the public act retroactively by the remarks of the legislators during consideration of this legislation. Those remarks support the conclusion that the legislature did not intend the fund to be liable for any claim transferred after the effective date of P.A. 95-277, § 9 (f). Representative O'Rourke, in discussing the purpose of P.A. 95-277, § 9 (f), stated: "And, finally, we close the fund to a vast majority of claims it now accepts . . . ." 38 H.R. Proc., Pt. 16, 1995 Sess., p. 5948. When introducing P.A. 95-277, § 9 (f), Senator Kissel specifically remarked that "[f]irst, we are trying to aggressively bring the fund down . . . ." 38 S. Proc., Pt. 15, 1995 Sess., p. 5486. He went on to

note that "[w]hat [we are] trying to do with this piece of legislation is close the fund *to all new transfers*. And what this bill does is exactly that as of July 1, 1995." (Emphasis added.) Id., pp. 5485–86. He further remarked that "[i]t is important to realize that while *we are closing as of July 1, 1995, transfers into the Second Injury Fund,* that that does not eliminate the fund because claims *are* being paid out of the fund for people who are disabled and these individuals can live for ten, fifteen, twenty, thirty, forty more years." (Emphasis added.) Id., p. 5492. This legislative focus on the date of transfer, which obviously does not take place unless and until an appeal is filed, buttresses our conclusion that the legislature meant the act to apply retroactively—that is, to injuries that predated July 1, 1995, which resulted in appeals taken after that date. It is evident from these statements that the legislature intended the fund to be closed to any claim not transferred to the fund prior to July 1, 1995, not simply those claims brought for injuries that occurred after July 1, 1995. Thus, giving P.A. 95-277, § 9 (f), only prospective effect would be contrary to the expressed legislative intent that the fund be closed to "*all* new transfers."[9] (Emphasis added.) The legislative history and purpose of P.A. 95-277, coupled with a lack of an affirmative statement that it should be given prospective effect only, convince us that the legislature intended that § 9 (f) have a retroactive effect.

Finally, we note that P.A. 95-277, § 9 (f), was not created in a vacuum. There were several judicial and administrative decisions that created the backdrop against which this legislation was promulgated. This court had long since established that § 31-301 is a statute governing procedure to which the date of injury rule

[9] In this case, the claim was not transferred to the fund until the commissioner ordered the fund to make payments on October 22, 1996.

is not applicable: "The method of appeal from the compensation commissioner . . . is not controlled by the statute in effect on the day of the injury. The focus of § 31-301 is not upon the rights and obligations as between the parties, but upon the duties and powers of the compensation commissioner and the court to which the appeal is taken." *Chieppo* v. *Robert E. McMichael, Inc.*, supra, 169 Conn. 650; see *Kluttz* v. *Howard*, supra, 228 Conn. 404 n.3 (acknowledging this court's conclusion in *Chieppo* that date of injury rule does not apply to appellate procedure). Additionally, in *Annechiarico* v. *Friendly Ice Cream Co.*, 6 Conn. Workers' Comp. Rev. Op. 18 (1988), the board itself expressly interpreted then § 31-301 (b), the predecessor to § 31-301 (f) prior to its amendment by P.A. 95-277, § 9 (f), as a statute governing procedure that was to be applied retroactively.[10] "We presume that the legislature is aware of the judicial construction placed upon its enactments." *State* v. *Crowell*, 228 Conn. 393, 401, 636 A.2d 804 (1994); *Cappellino* v. *Cheshire*, 226 Conn. 569, 576, 628 A.2d 595 (1993); *Lumbermens Mutual Casualty Co.* v. *Huntley*, 223 Conn. 22, 30, 610 A.2d 1292 (1992). In the absence of any indication to the contrary, it must

---

[10] In *Annechiarico* v. *Friendly Ice Cream Co.*, 6 Conn. Workers' Comp. Rev. Op. 18 (1988), the board interpreted General Statutes (Rev. to 1985) § 31-301 (b), as amended by Public Acts 1986, No. 86-27 (P.A. 86-27). The plaintiff's injury predated the enactment of P.A. 86-27, but the case was not transferred to the fund until after its effective date. The fund argued that P.A. 86-27 should have prospective effect only because it affected the substantive rights of the parties. The board ruled that the statute, as amended, was procedural only and that it did not affect the substantive rights of the parties and thus should be given retroactive effect. The board reasoned that "[§] 31-301 (b) . . . obligating the [fund] to pay benefits merely 'accelerates' the delivery of the remedy to which the claimant may be entitled. It does not create a new substantive obligation on the part of the respondent [fund] as the money must be repaid to the [fund] if the respondents ultimately prevail." Id., 20–21. In a footnote, the board noted that an employer or insurer must likewise reimburse the fund should the claimant prevail. There is no material difference between the procedural posture in *Annechiarico* and the present case.

be presumed that the legislature knew P.A. 95-277, § 9 (f), was procedural and would be given retroactive effect in light of precedent. As previously noted, there is nothing in the text of P.A. 95-277, § 9 (f), nor the legislative history that would lead us to determine that the legislature intended a contrary result.

We conclude that P.A. 95-277, § 9 (f), is procedural in nature and does not effect a change in the substantive rights of the parties. Furthermore, there is no indication that the legislature intended P.A. 95-277, § 9 (f), to apply prospectively only. Indeed, the purpose and circumstances of its enactment, coupled with the comments in the legislative history, evince a clear intent to the contrary. Accordingly, P.A. 95-277, § 9 (f), should be applied retroactively to all cases not actually transferred to the fund prior to the date it became effective, July 1, 1995. This is such a case.

The decision of the board is reversed and the case is remanded to the board with direction to reverse the commissioner's transfer of liability to the fund and to order the employer and its insurer to pay benefits pending the appeal.

In this opinion BORDEN, NORCOTT, KATZ and PALMER, Js., concurred.

BERDON, J., with whom MCDONALD, J., joins, concurring. To believe that General Statutes § 31-301 (f) does not affect the substantive rights of employers and insurers is to believe that Alice In Wonderland represents the real world. The majority concludes that § 31-301 (f) is procedural in order to avoid the application of the "date of injury rule"[1] because an employee whose

---

[1] The date of injury rule provides "that new workers' compensation legislation affecting rights and obligations as between the parties, and not specifying otherwise, applied only to those persons who received injuries after the legislation became effective, and not to those injured previously." *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988).

claim for workers' compensation benefits is denied is statutorily obligated to repay an employer or its insurer some or all of the benefits received. The majority seems to ignore the fact that the employer or its insurer has little chance of recovering those benefits paid to employees during the appeal period. This is not because the employees are unwilling to abide by their obligations, but, rather, it is a result of the fact that many wage earners would not have the wherewithal to reimburse the employer or the insurer for weekly compensation and medical costs advanced during the appeal period.

Nevertheless, I agree with the majority's conclusion, not as a result of the application of the date of injury rule, but, rather, because the legislative history of § 31-301 (f), as recited in the majority opinion, indicates that the legislature intended it to have retroactive application.

Accordingly, I concur in the result.